FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 OCT -5 PM 3: 17

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JOHN HENDERSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 98-G-1072-S |
| COLUMBUS McKINNON CORPORATION, | ) | |
| Defendant. | ) | ENTERED |
| | ) | OCT 0 6 1999 |
| A. LAKIN & SONS, INC., | ) | |
| Intervenor-plaintiff. | ) | |

## MEMORANDUM OPINION

This cause is before the court upon the motion of summary judgment filed by the defendant. The matter has been briefed and is now ripe for decision.

The plaintiff, John Henderson,[1] was injured while working in his capacity as a laborer for A. Lakin & Sons, Inc. in Tarrant, Alabama. A. Lakin & Sons is a business engaged in the used tire wholesale business. The company's business consists

---

[1] A. Lakin & Sons, Inc. has intervened in order to protect its right to subrogation. The court's disposition of plaintiff's claims is also dispositive of the intervenor's subrogation claim.



mainly of buying wholesale used tires, sorting them, and selling them to companies for reuse.

Shortly before the date of Mr. Henderson's injury, Lakin & Sons made the decision to buy a tire shredder. This decision was made in order to fill what they perceived as a growing demand for shredded tires for use in furnaces used to generate power in industrial plants. Lakin & Sons decided to by a used Columbus McKinnon shredder. Columbus McKinnon, the defendant, was in the business of manufacturing, selling and distributing these machines.[2] As part of the purchase agreement, Columbus McKinnon agreed to completely refurbish the shredder specifically for Lakin & Sons' needs by designing an output conveyor that would take the shredded rubber from the shredder, and dump it into dump trucks that would then haul the pieces away.[3]

Two months before the plaintiff's injury, the tire shredder was delivered to Lakin & Sons' plant in Birmingham, Alabama.[4] A representative of Columbus McKinnon accompanied the delivery for the purpose of overseeing the installation of the shredder and to train Mr. Tidwell, the plaintiff's supervisor at Lakin & Sons, and his employees in how to operate the shredder.[5] These instructions focused on maintaining a

---

[2] Tidwell Depo. at 16.

[3] Tidwell Depo. at 20-21, 24-25.

[4] Tidwell Depo. at 13.

[5] Tidwell Depo. at 27.

smooth flow of shredded rubber through the machine, including use of the emergency shutoffs throughout the equipment in the event of any problems.[6] There were emergency stops all around the machine, as well as one approximately three to five feet from where the plaintiff was injured.[7] After the machine had been installed, Mr. Tidwell and the Columbus McKinnon representative began to notice that some of the tire shreds were beginning to collect on the rollers that ran the output conveyer.[8] Engineers from Columbus McKinnon recommended that the machine be periodically cleaned off, but if a piece of rubber was too large, then the machine should be shut off immediately and the shred removed by hand.[9] Mr. Tidwell was instructed that such cleaning should only take place while the machine was not running.[10]

The plaintiff was assigned the job of shoveling the rubber strips that fell off of the conveyer back onto the output conveyer. He was also assigned the job of removing strips of rubber that became stuck in the rollers of the conveyer.[11] Before the plaintiff began working around the tire shredder, Mr. Tidwell instructed him that whenever a

---

[6] Tidwell Depo. at 31-32.

[7] Tidwell Depo. at 31-33.

[8] Tidwell Depo. at 34.

[9] Tidwell Depo. at 38.

[10] Tidwell Depo. at 38.

[11] Tidwell Depo. at 45.

rubber shred needed to be removed from the conveyer, Henderson was to alert Tim Fuller to shut the machine down. In the Event Mr. Fuller was not present, then Henderson was told to utilize the emergency shutoff beside the conveyer.[12] Mr. Tidwell testified that he went through the process of shutting the machine down via the emergency shutoffs with the plaintiff when Columbus McKinnon installed the shredder.[13]

On April 25, 1996, the plaintiff noticed a rubber shred lodged in the rollers between the top conveyer and bottom conveyer of the tire shredding machine. Without notifying the machine operator to shut the machine down, Henderson reached into the conveyer while it was running and attempted to remove the shred with his hand.[14] The plaintiff's arm became caught in the belt, where he remained trapped for some time before the machine operator noticed him and shut the machine down.[15]

---

[12] Tidwell Depo. at 46. Mr. Henderson testified that he knew the machine had shut off switches that would shut the machine off. Henderson Depo. at 44. Mr. Henderson also testified that he had been told not to shut the machine off himself, but also that he could not say that he had been instructed not to ask the machine operator to shut the machine down in the event rubber needed to be cleaned from the conveyer. Henderson Depo. at 53-54. Mr. Henderson also testified, when asked how he was told to clean the rubber off the machine, responded: "When they get tired of running the machine, I guess, they'll cut it off and then they clean it out. But they said make sure the thing be clean . . . ." Henderson Depo. at 54.

[13] Tidwell Depo. at 47.

[14] Tidwell Depo. at 51. Mr. Henderson's testimony does not contradict Mr. Tidwell's account of the accident. Henderson Depo. at 62-63.

[15] Tidwell Depo. at 50. Henderson Depo. at 62-64.

The plaintiff alleges in his complaint causes of action based upon the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), alleging that the tire shredder was not reasonably safe while being used in a foreseeable manner. The plaintiff also asserts claims based upon breach of an express or implied warranty that the tire shredder was reasonably fit and suitable for the purposes for which it was intended to be used; claims alleging that the defendant negligently and/or wantonly serviced, installed, maintained, modified and/or repaired the tire shredder machine; and a claim that the defendant negligently and/or wantonly failed to warn the plaintiff of the dangers associated with the use of the tire shredder. The defendant asserts that the plaintiff was contributorily negligent as a matter of law.

Contributory negligence is an affirmative defense under the AEMLD. Hicks v. Commercial Union Ins., 652 So. 2d 211, 219 (Ala. 1994). In order to find that a plaintiff has been contributorily negligent,

> there must be a finding that the Plaintiff put himself in danger's way . . . and a finding that the Plaintiff appreciated the danger confronted . . . . Moreover, it must be demonstrated that the Plaintiff's appreciation of the danger was a conscious appreciation at the moment the incident occurred . . . . Mere "heedlessness' is insufficient to warrant a finding of contributory negligence as a matter of law.

Rodgers v. Shaver Manufacturing Co., Inc., 993 F. Supp 1428 (M.D. Ala. 1998)(quoting Hicks at 219). The plaintiff's deposition testimony demonstrates that the plaintiff was told not to put his hand near the conveyer belt while it was running.

> Q: Let's talk about the belt that you got hurt on, okay? Your job was to keep the rubber pulled away from that belt; is that right?
>
> A: Right
>
> Q: Did anybody ever tell you, don't put your hand near that belt when it's running?
>
> A: Yeah.
>
> Q: They told you that?
>
> A: Yeah.

(Henderson Depo. at 58-59.) The plaintiff's deposition testimony also demonstrates that he was aware of the danger of placing his hand near moving machinery.

> Q: And you knew that moving machinery can catch your hand and you arm didn't you?
>
> A: Oh, Lord, have mercy, I didn't know.
>
> Q: You didn't know that?
>
> A: I knew it would catch me, sir. Do you know what I'm saying?
>
> Q: No, sir, I need to get you to speak up.
>
> A: Okay. When I reached, you know, to get the rubber out, it just pulled my arm out. I didn't have no idea. I just screamed for help.

(Henderson Depo. at 43.) A reasonable jury could not conclude based upon the evidence of record that the plaintiff was not aware of the danger posed by the conveyer belt when he reached in to remove the rubber shred from the moving conveyer belt. Therefore, no genuine issue of fact exists as to the plaintiff's contributory negligence and the defendant

6

is entitled to a judgment as a matter of law on plaintiff's claims for negligence and under the AEMLD.

The plaintiff has also asserted a negligent failure to warn claim. This claim is separate and distinct from the plaintiff's AEMLD claim. In <u>Ex Parte Chevron Chemical Co.</u>, the Alabama Supreme Court noted the existence of a duty to warn in a pure negligence context. 720 So. 2d 922, 924 (Ala. 1998)("The duty to warn end users of the dangers of products arises, in a pure negligence context, from § 388, Restatement (Second) of Torts, as adopted by this Court."). The court explained that the supplier has no duty to warn "when the danger is obvious." 720 So. 2d at 925. In the case at hand, the plaintiff was clearly aware of the danger imposed by the conveyer belt and there exists no genuine issue of fact as to that awareness. Therefore, even were he not contributorily negligent, the defendant would be entitled to summary judgment on the plaintiff's negligent failure to warn claim.[16]

---

[16] The plaintiff's negligent failure to warn claim would also fail because "a manufacturer who sells an industrial product to a sophisticated purchaser has no duty to provide warnings to the employee of that purchaser where the purchaser has an obligation to inform its employees." <u>Ex Parte Chevron</u>, 720 So. 2d at 926 n. 3 (quoting <u>Vines v. Beloit Corp.</u>, 631 So. 2d 1003, 1006 (Ala. 1994)). Mr. Tidwell in his deposition testified that he knew it would be unsafe to remove shreds of rubber from the conveyer while it was running. (Tidwell Depo. at 41.) Therefore, the plaintiff's employer was aware of the danger and had an obligation to inform the plaintiff of that danger.

The defendant is also entitled to summary judgment on the plaintiff's wantonness and breach of warranty claims. The plaintiff's response to the defendant's summary judgment motion as to these counts is his statement in brief as follows:

> The defendant recognized the defects and dangers associated with this machine and undertook to implement an emergency stop system. They sent engineers to the site and observed the problems with the machine and did nothing to correct the problems. They had actual notice that employees were subjected to these dangers.

(Plaintiff's brief at 8.) The only evidence in the record that might support the plaintiff's claims made in his brief are deposition excerpts from Mr. John Sims.[17] Only two pages of deposition testimony from Mr. Simms are included in the plaintiff's evidentiary submissions. Those two pages do not create a genuine issue of fact as to the defendant's wantonness or breach of warranty claims. The deposition excerpt appears to relate to the absence of shutoff switches, however, the brief excerpts submitted do not in any way tend to show the defendant was wanton or that any warranty was breached.

## CONCLUSION

The plaintiff has not introduced a genuine issue of fact as to his wantonness or breach of warranty claims. As to his AEMLD and negligence claims, the plaintiff was guilty of contributory negligence as a matter of law. The plaintiff also failed to introduce

---

[17] Mr. Simms apparently is an expert witness engaged by the plaintiff. The record, however, contains no expert summary as required by the court's scheduling order, as amended. Only two pages of Mr. Sims deposition testimony are included in the record, pages 32 and 44.

8

a genuine issue of fact as to his negligent failure to warn claim because the record clearly demonstrates that the plaintiff and his employer were aware of the obvious danger posed by the conveyer belt. Accordingly, the defendant is entitled to summary judgment as to each of plaintiff's claims. An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED this 6th day of October 1999.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.